UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MILLICENT BARRETT-BROWNING,
    *Plaintiff*,

v.

CONNECTICUT DEPARTMENT OF
CORRECTION, *et al.*,
    *Defendants*.

No. 3:18-cv-1732 (JAM)

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

Plaintiff works as a corrections officer and alleges that she has been the subject of discrimination by the defendants because of a disabling medical condition. I will grant in part and deny in part defendants' motions to dismiss.

### BACKGROUND

The following facts are set forth as alleged in the complaint.[1] Plaintiff Millicent Barrett-Browning has worked for the Connecticut Department of Correction (DOC) since 2004 and works as a corrections officer at the Hartford Correctional Center. Doc. #1 at 3 (¶ 7). She suffers from bladder dysfunction, which amounts to a disability for which she can continue to work provided that she has a reasonable accommodation to allow her to use a restroom frequently. *Ibid.* (¶ 8).

---

[1] For purposes of defendants' motions to dismiss, the Court limits its consideration at this time to those facts actually alleged by Barrett-Browning in the complaint rather than those additional facts that she proffers in her motion papers or any additional facts alleged in administrative complaints filed before the CHRO and EEOC that she chose not to re-allege in her federal court complaint. Although the complaint makes reference to plaintiff's filing of an administrative action (Doc. #1 at 5 (¶ 18)) and the Court understands that it has discretion to consider the contents of a document referenced in a complaint, if Barrett-Browning believes that there are facts of consequence in any administrative complaints or other documents that she has filed in the CHRO or EEOC, then she should take the time to properly include those allegations in any amended complaint that she files in this Court. *See Lopez as next friend of J.L. v. Hobbs Municipal School Dist.*, 2019 WL 3219324 at *2 (D.N.M. 2019) (noting that court has discretion on Rule 12(b)(6) motion not to consider extrinsic materials even when referenced in the complaint); *In re Bank of New York Mellon Corp. Forex Transactions Litigation*, 991 F. Supp. 2d 479, 487 (S.D.N.Y. 2014) (same).

From 2014 onward, Barrett-Browning was given unfavorable employment evaluations and denied promotion to the position of lieutenant. *Id.* at 5 (¶ 15). The complaint does not say anything more about what happened in 2014. On some unspecified date, when Barrett-Browning appealed from an overall unsatisfactory rating, the DOC "scoffed" at her and stated that she could not be promoted based on her disability. *Ibid.*

According to the complaint, "[s]ince on or about May 12, 2015, and prior, the named defendants have harassed, intimidated, failed to reasonably accommodate plaintiff's physical disability and retaliated against the plaintiff to the point of exhaustion, requiring the plaintiff to go out on medical leave in 2015." *Id.* at 4 (¶ 10). In the "summer of 2015," Barrett-Browning "took a brief leave under the Family Medical Act." *Ibid.* (¶ 11). When she returned in the "fall of 2015," she made "another request for accommodation of her disabilities, assignment to a post with a bathroom in close proximity to her assigned work station, and sufficient and reasonable time to take bathroom breaks as medically necessary to empty her bladder." *Ibid.* (¶ 10).

Defendants denied her request. *Ibid.* "On or about September 2015 and prior," Barrett-Browning sought reasonable accommodations for her disability from the DOC but the DOC and her supervisor (defendant John Newton) "denied her request on an ongoing basis." *Id.* at 4 (¶ 9). Newton "regarded the plaintiff's leaves as pre-textual, and harbored a suspicion that the plaintiff was not disabled at all, but was a malingerer." *Ibid.* (¶ 12).

"When the plaintiff returned from medical leave on or about September 22, 2015, she was again denied a work assignment near a bathroom until on or about July 31, 2016." *Id.* at 5 (¶ 13). "[F]rom approximately 2015 onward," Barrett-Browning was "made to feel unwelcome and unwanted at her place of employment, where she was frequently ridiculed by colleagues." *Id.* at 6 (¶ 16); *see also id.* at 4-5 (¶ 12) (alleging that "[d]efendants developed animosity and malice

toward the plaintiff, and engaged in an intentional campaign to deny her promotion to the position of lieutenant, [and/or] otherwise harass[ed], intimidate[ed], [and] failed to reasonably accommodate plaintiff's physical disability and/or retaliate[ed] against complainant hoping the plaintiff would resign from state employment"). "This pattern of harassment, ridicule and intimidation continues" to the present day. *Id.* at 5 (¶ 17).

On October 19, 2018, Barrett-Browning filed a complaint initiating this court action. The complaint names three defendants: the Connecticut Department of Correction, Allison Black, and John Newton. Black is alleged to be the warden of the Hartford Correctional Center, and Newton is alleged to be Barrett-Browning's supervisor; both Black and Newton are sued in their individual capacity only. *Id.* at 2-3 (¶¶ 1, 5-6).

Barrett-Browning alleges claims for disability discrimination in violation of the Americans with Disabilities Act and the Rehabilitation Act, as well as constitutional claims for First Amendment retaliation and equal protection under the Fourteenth Amendment. *Id.* at 2 (¶ 1). The complaint seeks money damages but makes no claim for injunctive relief. *Id.* at 6 (¶ 19). Defendants have moved to dismiss. Docs. #16, #34.

## DISCUSSION

The standard that governs motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain the Court's subject matter jurisdiction and to sustain plaintiffs' claims for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F.Supp.3d 153, 155-56 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S.

at 678. Because the focus must be on what facts a complaint alleges, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).

### *Americans with Disabilities Act*

The Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.,* broadly protects against disability-based discrimination. "It forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).

Although Title I of the ADA prohibits disability-based employment discrimination, the Eleventh Amendment generally immunizes the States and their related entities from a federal lawsuit for money damages. Here, it precludes any claim for money damages under Title I of the ADA against a state entity like the DOC for disability-based employment discrimination. *See Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir. 2003).[2]

Nor do Barrett-Browning's ADA claims fare any better under Title II of the ADA. The ADA "unambiguously limits employment discrimination claims to Title I," and "[a] public employee may not bring a Title II claim against his or her employer, at least when the defendant employer employs fifteen or more employees." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013). There is no dispute that the DOC has far more than fifteen

---

[2] Because the complaint does not seek prospective injunctive relief or seek to proceed against any of the individual defendants in their official capacity, there is no cause for me to consider any exception to Eleventh Amendment immunity. *See, e.g., Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (discussing exception under *Ex parte Young* to Eleventh Amendment immunity for prospective injunctive relief claims against individual state officers in their official capacity).

4

employees.

As to the individual defendants (Black and Newton), the ADA does not provide for individual liability in the employment discrimination context. *See Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir. 2010) (*per curiam*); *Castro v. City of New York*, 24 F. Supp. 3d 250, 259 (E.D.N.Y. 2014). Accordingly, I will dismiss the ADA claim against all defendants in this action.

### *Rehabilitation Act*

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Rehabilitation Act provides for essentially equivalent protections against disability discrimination as the ADA. *See* 29 U.S.C. § 794(d); *see also Natofsky v. City of New York*, 921 F.3d 337, 345-46 (2d Cir. 2019); *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

In contrast to the ADA, however, a cause of action against the DOC for money damages under the Rehabilitation Act is not precluded by the Eleventh Amendment, because the State of Connecticut has waived its sovereign immunity by continued acceptance of federal funds under the Act. *See Super v. J. D'Amelia & Associates, LLC*, 2010 WL 3926887, at *12-13 (D. Conn. 2010); *see also Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 113-14 (2d Cir. 2001) (discussing basis for waiver of sovereign immunity under the Eleventh Amendment to apply differently to the Rehabilitation Act than to the ADA).

The DOC argues that the complaint does not adequately allege that Barrett-Browning is

disabled—that the complaint "contradictorily asserts that she can perform the essential functions of her position as a Correctional Officer despite not receiving her requested accommodation or any accommodation" and that "[s]he does not allege that there is a substantial limitation on her work." Doc. #16-1 at 6-7. I do not agree. A fair reading of the complaint discloses that Barrett-Browning is severely impacted by her dysfunction and that it significantly affects her ability to perform her work, but that she "is and was able to perform her duties *with reasonable accommodations*." Doc. #1 at 3 (¶ 8) (emphasis added). Similarly, it is premature for the Court to resolve at the initial pleading stage the DOC's fact-based arguments that Barrett-Browning's requested accommodation was not reasonable. Doc. #16-1 at 19-24.

The DOC next argues that Barrett-Browning's claims are time-barred by the three-year statute of limitations that applies to claims for disability-based discrimination under the Rehabilitation Act. *See M.D. Southington Bd. of Educ.*, 334 F.3d 217, 224 (2d Cir. 2003). I agree but only in part.

To the extent that Barrett-Browning alleges that the DOC failed to promote her, the complaint does not allege any date at all on which she was denied a promotion. It alleges only in conclusory terms that defendant Newton "engaged in an intentional campaign to deny her promotion to the position of lieutenant" and that "[f]rom 2014 onward, the plaintiff was given unfavorable evaluations and denied promotion to the position of lieutenant . . . ." Doc. #1 at 5 (¶¶ 12, 14). The complaint was filed on October 19, 2018, and it does not plausibly allege any facts to suggest that Barrett-Browning was denied a promotion at any time within the three-year statute of limitations period after October 19, 2015. Accordingly, I will dismiss Barrett-Browning's claim under the Rehabilitation Act insofar as it is premised on any claim that the DOC failed to promote her.

6

I do not reach the same conclusion as to Barrett-Browning's failure-to-accommodate claim. The complaint alleges that "[o]n or about September 2015 and prior, the plaintiff sought reasonable accommodations," but that the DOC and Newton "ha[ve] denied her request *on an ongoing basis*." *Id.* at 4 (¶ 9) (emphasis added). The complaint further alleges that "[w]hen the plaintiff returned from medical leave on or about September 22, 2015, she was again denied a work assignment near a bathroom *until on or about July 31, 2016*." Doc. #1 at 5 (¶ 13) (emphasis added). These allegations are sufficient for initial pleading purposes to satisfy the statute of limitations. If discovery reveals that the DOC denied a reasonable accommodation but did so only prior to October 19, 2015, then there may be a basis for the DOC to argue that any failure-to-accommodate claim is time-barred. *See Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 135 (2d Cir. 2003).

In addition, the complaint includes allegations to support a non-time-barred claim for a disability-based hostile work environment. *Cf. Fox v. Costco Wholesale Corp.*, 918 F.3d 65 (2d Cir. 2019) (recognizing hostile-work-environment claims under the ADA). Barrett-Browning alleges that she was subject to retaliation and ridicule to the point of exhaustion, resulting in her taking a medical leave, Doc. #1 at 4 (¶ 10), and that "[t]his pattern of harassment, ridicule and intimidation continues until this very day." Doc. #1 at 5 (¶ 17). Although these allegations of hostile work environment are quite thinly pleaded, defendants do not argue that they are insufficient on their face to support a hostile work environment claim, and I will allow this aspect of Barrett-Browning's Rehabilitation Act claim to proceed along with her failure-to-accommodate claim.

As to the individual defendants (Black and Newton) and against whom Barrett-Browning alleges she is proceeding solely in their individual capacity, Barrett-Browning does not contest

7

that individual defendants are not subject to personal liability under the Rehabilitation Act. *See, e.g., Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009). In short, therefore, I will grant the defendants' motions to dismiss the Rehabilitation Act claims against Black and Newton in their entirety and against the DOC as to the failure-to-promote claim but not as to the failure-to-accommodate and hostile-work-environment claims.

*First Amendment retaliation*

The complaint alleges that Barrett-Browning was subject to retaliation in violation of the First Amendment, apparently on the basis that she was subject to adverse action after asking for a reasonable accommodation for her disability and complaining of disability-related discrimination to the CHRO and EEOC. Because the DOC is a state entity, it is clearly entitled to Eleventh Amendment immunity from Barrett-Browning's claim for money damages arising from any violation of the First Amendment. *See Lanteri v. Connecticut*, 726 F. App'x 80-81 (2d Cir. 2018).

Moreover, the complaint does not allege any acts at all by Black. "If a defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant." *Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) (emphasis in original). Accordingly, there is no basis to sustain any claim that Black engaged in any unlawful discrimination against Barrett-Browning.

That leaves only the First Amendment retaliation claim against Newton. In order to maintain a valid claim for First Amendment retaliation, a plaintiff must allege facts showing that "(1) [her] speech or conduct was protected by the First Amendment; (2) the [governmental] defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d

267, 272 (2d Cir. 2011).

When a First Amendment retaliation claim is made in the context of a plaintiff's employment with the government, it is subject to a higher threshold than an ordinary First Amendment retaliation claim. Because a government employer—like any employer—has the right to maintain a reasonably efficient and orderly work environment, the government *qua* employer may restrict or penalize the speech of its own employees in ways that would not be acceptable if the government were regulating the speech of the citizenry in general. *See Ricciuti v. Gyzenis*, 834 F.3d 162, 167-68 (2d Cir. 2016); *Lynch v. Ackley*, 811 F.3d 569, 577 (2d Cir. 2016).

For this reason, when a plaintiff is a public employee who claims that she has been the victim of First Amendment retaliation in the government employment context, the plaintiff's speech is not subject to protection from adverse action unless her speech addressed a matter of *public concern* and unless she spoke *in her capacity as a citizen* rather than an employee. *See Garcetti v. Ceballos*, 547 U.S. 410, 420-22 (2006); *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011).

This determination of whether speech involves a matter of public concern and is made as a citizen rather than an employee is a question of law for a court to decide in light of the content, form, and context of a given statement. *Jackler*, 658 F.3d at 235, *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008). "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, 573 U.S. 228, 241 (2014) (internal citations and quotation marks omitted). The key question is "whether the employee's speech was

calculated to redress personal grievances or whether it had a broader public purpose." *Ruotolo*, 514 F.3d at 189 (internal citations and quotation marks omitted). If the former, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti*, 547 U.S. at 418.

The complaint does not allege facts to show or suggest that any of Barrett-Browning's statements were on matters of public concern. Her statements were made solely to redress a personal grievance regarding the circumstances of her employment. *See Norton v. Breslin*, 565 F. App'x 31, 34 (2d Cir. 2014) (correctional officer's complaint "that she was denied advancement in favor of a white employee with less seniority, and that specific white employees were treated better than she was" could not serve as basis for First Amendment retaliation claim because "[the] complaints of personal discrimination are not connected to any broader policy or practice and, thus, do not raise a public concern of systemic discrimination"). Accordingly, I will dismiss the First Amendment retaliation claim.

### *Equal Protection*

Barrett-Browning also alleges she was subject to disability-based discrimination in violation of her rights under the Equal Protection Clause of the Fourteenth Amendment. As before, I will dismiss this claim against the DOC on grounds of Eleventh Amendment sovereign immunity and against Black for failure to allege facts to show her personal involvement.

That leaves for consideration only Barrett-Browning's equal protection claim against Newton. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Ordinarily, a plaintiff may state a violation of the Equal Protection Clause when a governmental classification discriminates between entire classes or groups of people as well as when a

10

classification singles out solely the plaintiff as a "class of one" for disparate treatment. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 29 (2d Cir. 2018). But, because of the distinct concerns that arise when the government acts as an employer, the Supreme Court has held that the Equal Protection Clause does not extend to class-of-one claims in the public employment context. *See Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008).

Barrett-Browning's complaint alleges that Newton arbitrarily subjected her to mistreatment because of her disability. Disability status is not a suspect classification for purposes of heightened scrutiny under the Equal Protection clause. As the Supreme Court has explained, "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational," and "[t]hey could quite hardheadedly—and perhaps hardheartedly—hold to job-qualification requirements which do not make allowance for the disabled," such that "[i]f special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 367-68 (2001).

Absent a classification that burdens a suspect class or the exercise of a fundamental right, a government classification among different groups of persons does not run afoul of the Equal Protection Clause if there is any rational basis to support it. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993). Here, defendants' claim that they could not accommodate an employee who would need to leave her post more frequently than other officers satisfies the low bar set by rational basis review. Doc. #16-1 at 4 (claiming that "no matter how close the restroom was, [plaintiff] could not simply leave to use it" without another officer needing to cover her post); *see also Friedman v. Bloomberg L.P.*, 884 F.3d 83, 92 (2d Cir. 2017) (noting that a court must

uphold a classification "'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification'") (quoting *Heller*, 509 U.S. at 320).

Apart from her class-based disability discrimination claim, Barrett-Browning is in essence alleging a class-of-one arbitrariness claim that may not be maintained in the public employment context. *See Chick v. Cty. of Suffolk*, 546 F. App'x 58, 60 (2d Cir. 2013); *Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 282 (E.D.N.Y. 2014) (Bianco, J.). Accordingly, I will dismiss Barrett-Browning's equal protection claim.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss (Docs. #16 and #34) are GRANTED in part and DENIED in part. Plaintiff's claims under the Rehabilitation Act for failure-to-accommodate her disability and for a hostile work environment may proceed against the defendant Connecticut Department of Correction only. All other claims and defendants are dismissed. If plaintiff believes there are grounds to file an amended complaint that cures any of the deficiencies identified in this ruling, then plaintiff may move pursuant to D. Conn. L. Civ. R. 7(f) to file an amended complaint within 21 days by August 19, 2019.

It is so ordered.

Dated at New Haven this 29th day of July 2019.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge